USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/1/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
SREAM, INC.,
                    Plaintiff,

-against-                          16-CV-2090 (CM) (OTW)

WEST VILLAGE GROCERY INC., et al.,     **REPORT & RECOMMENDATION**

                    Defendants.
------------------------------------------------------x

**MEMO ENDORSED**

ONA T. WANG, United States Magistrate Judge:

**To the Honorable Colleen McMahon, Chief United States District Judge:**

I. **Introduction**

On March 22, 2016, Plaintiff Sream, Inc. ("Sream") brought this action against Defendants West Village Grocery Inc.; Pinaz Enterprise Inc. a/k/a 6th Ave News & Tobacco a/k/a Newstand & Tobacco; Digital Palace Inc. a/k/a Digital Palace; Delancey's Orchard LLC a/k/a/ Freshco Grocery; and Does 1–10, for damages arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* (Compl. ¶ 1, ECF 1.) On May 9, 2017, the Court entered a default judgment against West Village Grocery Inc., Pinaz Enterprise Inc., and Delancey's Orchard LLC as to liability as they failed to appear in the action. (ECF 22.) The case was referred to Magistrate Judge Barbara C. Moses on September 18, 2017 for an inquest after default. (ECF 26.) After the default was granted in favor of Sream, Sream filed a Notice of Voluntary Dismissal as to West Village Grocery Inc. (ECF 33.) The case was reassigned to me on March 5, 2018. On May 30, 2018, I directed Sream to submit proposed findings of fact, conclusions of law, and damages calculations. (ECF 35.) Sream filed Proposed Findings of Fact and Conclusions of Law on July 2,

9/28/2018 No objections have been received. Today was the last day for filing same. Therefore, the court accepts the Report and adopts it as the opinion of the court. Clerk to enter judgment & remove Docket # from the court's list of open motions.

Colleen McMahon USDJ

2018. (ECF 36.) Neither Pinaz Enterprise Inc. ("Pinaz") nor Delancey's Orchard LLC, ("Delancey's Orchard"), the two remaining defaulting defendants, filed any opposition.

After a careful review of Sream's submissions, I recommend that Sream be awarded statutory damages of $20,000 against Pinaz and $25,000 against Delancey's Orchard.

## II. Factual Background

This case arises from Sream's allegations that Defendants sold counterfeit glass water pipes and related materials that were branded with the "RooR" mark, of which Sream is the exclusive licensee.[1] Martin Birzle d/b/a RooR ("RooR") is a German-based designer and manufacturer of "smoker's products." (Compl. ¶ 11.) These products are "widely recognized and highly acclaimed" and thus the company is "one of the leading companies in the industry and has gained numerous awards and recognition for its innovative products and designs. (Id.) RooR has been producing glass water pipes for "nearly two decades" and their products have "a significant following and appreciation amongst consumers in the United States." (Id. ¶ 12.) RooR is the exclusive owner of several federally registered and common law trademarks, including for the word mark RooR and related logos. (Id. ¶ 14.) Since at least 2011, Sream has been the exclusive licensee of the RooR mark in the United States. (Id. ¶ 13.) Under the licensing agreement, Sream has manufactured water pipes under the RooR mark and also advertises, markets, and distributes water pipes, parts, and other smoker's articles "in

---

[1] The facts are based on Sream's allegations and evidentiary support. The allegations are accepted as true, and Sream is "entitled to all reasonable inferences from the evidence offered," for purposes of its motion for default judgment. *Gray v. Proteus Sports & Racing Cars Ltd.*, 13-CV-8717, 2014 WL 7330859, at *4 (S.D.N.Y Dec. 23, 2014) (quoting FED. R. CIV. P. 55(a)); *see also Transatlantic Marine Claims Agency, Inc v. Ace Shipping Corp*, 109 F 3d 105, 108 (2d Cir 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.").

2

association with the RooR mark." (*Id.*) Because RooR and Sream "have built up and developed significant goodwill in the entire RooR product line," consumers are willing to pay higher prices for them. (*Id.* ¶ 14–15.) "For example, a RooR-branded 45 cm water pipe retails for $300 or more, while a non-RooR product of equivalent size will usually sell for less than $100." (*Id.* ¶ 15.) Because of the "higher sale value of RooR branded products . . . RooR products are targets of counterfeiters." (*Id.* ¶ 16.) Sream has been granted all enforcement rights to obtain injunctive and monetary relief for past and future infringement of the RooR marks. (*Id.* ¶ 17.)

Pinaz operates a retail smoke shop, named 6th Avenue News & Tobacco, in Manhattan. (*Id.* ¶ 7.) Delancey's Orchard also operates a retail smoke shop, named Freshco Grocery, in Manhattan. (*Id.* ¶ 9.) Sream had been investigating the counterfeit sale of RooR products at stores similar to those operated by Defendants. (*Id.* ¶ 20.) On April 2, 2015, an investigator hired by Sream, James Orfanos, purchased a glass pipe bearing the RooR mark from Pinaz for $15, (*Id.* ¶ 22), after observing four pipes bearing the RooR mark in the store. (*Id.* Ex. B.) Sream inspected the purchased pipe and confirmed that it was not an authentic RooR product, and, as neither Sream nor any other agent had authorized Pinaz to use the RooR Marks, it "was in fact a counterfeit." (*Id.* ¶ 23.) On April 28, 2015, Orfanos purchased a glass pipe bearing the RooR mark from Delancey's Orchard for $32.65, (*Id.* ¶ 26), after observing five pipes bearing the RooR mark in the store. (*Id.* Ex. D.) Sream inspected the purchased pipe and confirmed that it was not an authentic RooR product, and, as neither Sream nor any other agent had authorized Delancey's Orchard to use the RooR Marks, it "was in fact a counterfeit." (*Id.* ¶ 27).

Sream alleges that both Pinaz and Delancey's Orchard intentionally use a mark confusingly similar to or identical to the RooR mark to confuse customers, to aid in the

3

promotion and sales of its counterfeit products, and "to receive higher profit margins." (*Id.* ¶¶ 19, 30.) Pinaz and Delancey's Orchard have "traded upon and diminished the goodwill of the RooR Marks" as well as infringed upon RooR's federally registered trademarks. (*Id.* ¶ 32)

### III. Procedural Background

Sream filed its Complaint on March 22, 2016, alleging counterfeiting, trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; trademark dilution under New York State General Business Law § 360(1); unlawful deceptive acts and practices under New York State General Business Law § 349; and unfair competition under New York State Law. Under its claim for trademark infringement, Sream alleges that it is "entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits, and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114 and 1116." (Compl. ¶ 45.) For its claim of trademark counterfeiting, Sream alleges it is entitled to an award of "statutory damages of up to $2,000,000 per mark infringed under 15 U.S.C. § [] 1117(c)(2)." (*Id.* ¶ 54.) Sream further contends that "[i]n the alternative, and at a minimum, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits, and treble damages, costs, and reasonable attorneys' fees under 15 U.S.C. § [] 1117(b)." (*Id.* ¶ 55.)

The Summons and Complaint were served on both Pinaz and Delancey's Orchard on March 31, 2016, at their respective stores. (Affidavit of Service at 2, 4, ECF 9.) Pinaz and Delancey's Orchard failed to timely move, answer, or otherwise respond to the Complaint and Sream asked the Clerk of Court to enter default against them. (ECF 11.) The Clerk issued Certificate of Defaults against both on February 1, 2017. (ECF 13, 15.) On March 27, 2017,

4

Sream moved for default judgment. (ECF 19.) On May 9, 2017, Judge McMahon granted the motion and referred the case to the Magistrate Judge Moses for an inquest on damages. (ECF 22, 26.) The case was reassigned to me on March 5, 2018. I ordered Sream to submit proposed findings of fact, conclusions of law, and damages calculations by July 2, 2018, with opposition papers due by July 16, 2018. (ECF 35.) Sream submitted Proposed Findings of Fact and Conclusions of Law on July 2, 2018. (ECF 36.) Neither Pinaz nor Delancey's Orchard submitted any papers.

IV. **Discussion**

A. **Jurisdiction and Venue**

This Court has subject matter jurisdiction over federal law claims in this action in accordance with 28 U.S.C. § 1331 (federal question jurisdiction), 15 U.S.C. §§ 1051 *et seq.* (Lanham Act), 28 U.S.C. §§ 1338(a) (trademark) and (b) (unfair competition). This Court has supplemental jurisdiction over the state law claims in accordance with 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims. Venue is proper in this court in accordance with 28 U.S.C. § 1391(b) and (c).

B. **Default Judgment and Inquest Standard**

The Clerk of Court must enter default against a defendant who has failed to plead or otherwise defend an action, and that failure is shown by affidavit or otherwise. FED. R. CIV. P. 55(a). Following a default judgment, all well-pled factual allegations of the complaint, except those relating to damages, are accepted as true, and "a factual allegation will be deemed not well-pled only in very narrow, exceptional circumstances." *Ideavillage Products Corp. v. Bling*

*Boutique Store*, 16-CV-9039 (KMW), 2018 WL 3559085, at *2 (S.D.N.Y. July 24, 2018) (quoting *Trans World Airlines, Inc. v. Hughes*, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

At an inquest on damages, the plaintiff bears the burden of establishing an amount of damages with reasonable certainty. *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, 12-CV-1369 (LGS) (AJP) 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) (collecting cases). An inquest into damages may be conducted "on the papers," without an evidentiary hearing. See *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *Maldonado v. La Nueva Rampa, Inc.*, 10-CV-8195 (LLS) (JLC) 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012) ("A hearing is not required where a sufficient basis on which to make a calculation exists."). In this case, no hearing was requested or held, as Sream requested an award of statutory damages under the Lanham Act.

### C. Statutory Damages

#### 1. Applicable Law

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, permits plaintiffs to elect as a remedy either actual or statutory damages for the sale of goods with counterfeit marks. 15 U.S.C. § 1117. Statutory damages may be awarded in the amount of:

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. *Id.* § 1117(c).

6

Although § 1117 provides no further guidelines for assessing appropriate statutory damages, courts generally refer to the factors considered in cases regarding an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which provides for statutory damages for willful infringement of a copyright. *See AW Licensing, LLC v. Bao*, 15-CV-1373 (KBF), 2016 WL 4137453, at *3 (S.D.N.Y. Aug. 2, 2016); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004). The factors considered by courts include:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."

*Gucci Am. Inc.*, 315 F. Supp. 2d at 520 (quoting *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co, Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

In cases falling under both statutes, statutory damages against a defendant who acted willfully are intended to serve the dual role of compensating a plaintiff for injuries and discouraging wrongful conduct by the defendant and others. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113–14 (2d Cir. 2001); *Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009). ("Where a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others.")

Plaintiffs may also obtain injunctive relief, including an order enjoining defendants from future sale of goods with the counterfeit marks, "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a); *see John Wiley & Sons, Inc.,*

*v. Book Dog Books, LLC*, 13-CV-816 (WHP), 2018 WL 3956508, at *4 (S.D.N.Y. July 24, 2018). A plaintiff is entitled to a permanent injunction if it can demonstrate "(1) actual success on the merits, and (2) irreparable harm." *Gucci Am., Inc. v. Duty Free Apparel, Inc.*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003). When the defendant is in default, actual success on the merits is established. *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008). Additionally, "[i]n a trademark case, irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *CommScope, Inc. v. Commscope (U.S.A.) Int'l Group Co.*, 809 F. Supp. 2d 33, 41 (N.D.N.Y. 2011) (quoting *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987)). The statute also enables a court to award costs and, in "exceptional cases," reasonable attorneys' fees, to the prevailing party. 15 U.S.C. § 1117(a); *see Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 265–66 (2d Cir. 2014) ("exceptional" circumstances in Lanham Act cases include willful infringement). In the Second Circuit, attorneys' fee awards under § 1117(a) are available to plaintiffs who opt to receive statutory damages under § 1117(c). *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

2. Analysis

Sream seeks statutory damages "in a minimum amount of $10,000 per fake water pipe" found in each Defendant's store, or $40,000 for Pinaz, and $50,000 for Delaney's Orchard. (Pl.'s Proposed Findings of Fact and Conclusions of Law at 36, filed July 2, 2018, ECF 36.) Pinaz's and Delancey's Orchard's violations of the trademark law were established by their failure to "controvert the evidence of counterfeiting alleged in the complaint" or otherwise appear in this

8

action. *North Face Apparel Corp. v. Moler*, 12-CV-6688 (JGK) (GWG), 2015 WL 4385626, at *6 (S.D.N.Y. July 16, 2015). Moreover, "[b]y virtue of their default [defendants] are deemed to be willful infringers." *Id.* (quoting *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, 12 Civ. 9190 (GDB) (AJP), 2013 WL 6481354, at *3 (S.D.N.Y. Dec. 3, 2013)). Thus, in accordance with 15 U.S.C. § 1117(c)(2), Sream is entitled to statutory damages in an amount that the Court considers "just," not to exceed $2,000,000 per counterfeit mark, per type of goods or services sold, offered for sale, or distributed.

Several factors set forth above weigh in favor of granting Sream a lower statutory damages award than the amount sought. In an inquest on damages in a similar Lanham Act case brought by Sream, Magistrate Judge Debra A. Freeman recommended that Sream be awarded statutory damages in the amount of $50,000 per defendant, or $3,333.33 to $4,166.66 per mark. *Sream, Inc. v. Khan Gift Shop, Inc.*, 15-CV-2091 (KMW) (DF), 2016 WL 1130610, at *10 (S.D.N.Y. Feb. 23, 2016), adopted by *Sream, Inc. v. Khan Gift Shop*, Inc. 15-CV-2091 (KMW) (DF), 2016 WL 1169517 (S.D.N.Y. Mar. 22, 2016). Here, as in the prior case, the allegations in Sream's Complaint do not suggest that either Pinaz or Delancey's Orchard reaped substantial profits from their sale of counterfeit RooR pipes. The pipes purchased by Orfanos cost $15.00 at Pinaz, (Compl. Ex. B.), and $32.65 at Delancey's Orchard. (Compl. Ex. D.). Assuming sale of all four of the counterfeit pipes on display in Pinaz's store at $15.00, Pinaz would have earned, at most, $60.00. And assuming sale of all five of the counterfeit pipes on display in Delancey's Orchard's store at $32.65, Delancey's Orchard would have earned, at most, $163.25. *See Khan Gift Shop, Inc.*, 2016 WL 1130610, at *9 (finding that defendants would have made less than $490 in profit

on the RooR-marked pipes observed in their stores). Moreover, Sream has failed to provide specific evidence of the revenues that it lost as a result of this counterfeiting.

Nevertheless, Pinaz's and Delancey's Orchard's willful conduct, their failure to participate in the case, including discovery, and the potential deterrence effect of a higher statutory damages award, "weighs in favor of granting Plaintiff an award that would be higher than Plaintiff's actual damages." *Id.* The Court finds that an award of $20,000 against Pinaz and $25,000 against Delancey would serve as a specific and general deterrent to others, while ensuring the Sream does not reap a "windfall" against a small-scale infringer. *Id.* This amount "far exceeds the profits that Defendants apparently reaped, but . . . acknowledges Defendants' willful conduct and the importance of deterring potential future infringers." *Id.* at *10; *see All-Star Marketing Grp, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 624–25 (S.D.N.Y. 2011) (awarding statutory damages of $25,000-$50,000 per mark in the absence of *any* information about defendants' earnings or plaintiff's losses). Further, this award of $5,000 per observed counterfeit pipe will provide sufficient deterrence "by denying defendants the fruits of their wrongful conduct while at the same time compensating plaintiffs for whatever damage their marks may have suffered by virtue of the distribution of counterfeit items through the premises in question." *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, 97-CV-4824 (JSM) (MH), 1999 WL 33740332, at *7 (S.D.N.Y. Apr. 19, 1999) (awarding statutory damages of $25,000 per mark).

   3. Injunctive Relief

In its Proposing Findings of Fact and Conclusions of Law, Sream asks the Court to grant "in accordance with F.R.C.P Rule 65 stopping [Pinaz and Delancey's Orchard] from selling fake RooR products in the future." (Pl.'s Proposed Findings of Fact and Conclusions of Law at 36.)

Sream has demonstrated that it is entitled to such relief under 15 U.S.C. § 1116(a). It has achieved success on the merits by virtue of Pinaz's and Delancey's Orchard's defaults as to liability, and the pleadings demonstrate that an ordinarily prudent customer would be confused by the source of the counterfeit goods. *CommScope, Inc.*, 809 F. Supp. 2d at 41. Accordingly, I recommend that the Court enter a permanent injunction enjoining Pinaz and Delancey's Orchard from further sale or distribution of counterfeit RooR-marked products.

### 4. Attorneys' Fees and Costs

Sream has demonstrated that it could be entitled to an award of attorneys' fees and costs under the statute. 15 U.S.C. 1117(a) (attorneys' fees available in "exceptional cases"); *Merck Eprova AG*, 760 F.3d at 265–66 ("exceptional" circumstances in Lanham Act cases include willful infringement). Sream has submitted no evidence, however, in support of such an award, or even requested a specific amount of fees or costs, and so the Court is unable to recommend an award. I therefore recommend that Sream's request for attorneys' fees and costs be denied without prejudice because its submissions do not provide appropriate support for such an award.

## V. Conclusion

For the reasons stated above, I recommend that the Court award Sream damages of $20,000 against Pinaz and $25,000 against Delancey's Orchard, and that the Court enter a permanent injunction enjoining Pinaz and Delancey's Orchard from further sale or distribution of counterfeit RooR-marked products. I further recommend that Sream's request for attorneys' fees and costs be denied without prejudice.

## VI. Objections

In accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be filed with the Clerk of Court, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Chief Judge McMahon.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983)).

Respectfully submitted,

Dated: September 14, 2018
New York, New York

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge